No. 16-11174

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

LONNY ACKER,
Plaintiff-Appellant

-v-

GENERAL MOTORS, L.L.C.,
Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
4:15-CV-00706-A

---

# REPLY BRIEF OF APPELLANT

---

Robert J. Wiley
Texas Bar No. 24013750
*Board Certified – Labor and Employment Law – Texas Board of Legal Specialization*
Allison C. Reppond
Texas Bar No. 24085733

ROB WILEY, P.C.
2613 Thomas Avenue
Dallas, TX 75204
Telephone: (214) 528-6500
Facsimile: (214) 528-6511
areppond@robwiley.com
ATTORNEYS FOR APPELLANT

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................... i

TABLE OF AUTHORITIES ........................................................... iii

ARGUMENT ........................................................... 1

A. Whether Mr. Acker provided reasonable notice to GM of his need for FMLA leave is a question of fact for a jury, as Mr. Acker provided notice to GM of his need for leave. ........................................................... 1

1. GM's policies and procedures for employees requesting FMLA leave cannot conflict with the FMLA's "reasonable notice" standard for employees requesting unexpected leave. ........................................................... 2

2. The amount and timing of notice provided by Mr. Acker presents a factual dispute that raises a genuine issue of material fact, as a jury could conclude that Mr. Acker provided sufficient notice under the FMLA and that GM interfered with Mr. Acker's rights under the FMLA and retaliated against Mr. Acker ........................................................... 9

C. Mr. Acker's requests for FMLA leave constitute protected activity to support a claim for disability discrimination and retaliation under the ADAAA. ............. 12

D. GM's apparent assertion that its policy on employee notice for FMLA leave must be accepted as reasonable by the Court without further examination by a jury would lead to employer abuse of the FMLA if accepted by this Court. ........................................................... 13

CONCLUSION ........................................................... 15

CERTIFICATE OF SERVICE........................................................ 17

CERTIFICATE OF COMPLIANCE........................................... 18

# TABLE OF AUTHORITIES

**Cases:**

*C.R. Pittman Constr. Co. v. Nat'l Fire Ins. Co. of Hartford*,
453 F. App'x 439 .......... 10

*Callison v. City of Philadelphia*,
430 F.3d 117 (3d Cir. 2005) .......... 2–5

*Curry v. Goodwill Indus. of Ky., Inc.*,
No. 1:11CV-00093-JHM, 2013 WL 1411132,
(W.D. Ky. Apr. 8, 2013) .......... 7–8

*Harrelson v. Lufkin Indus., Inc.*,
614 F. App'x 761 (5th Cir. 2015) .......... 11

*Lubke v. City of Arlington*,
No. 4:02-CV-188-Y, 2003 WL 22466200,
(N.D. Tex. Sept. 9, 2003) .......... 11–12

*Millea v. Metro-North R.R. Co.*,
658 F.3d 154 (2d Cir. 2011) .......... *passim*

*Mora v. Chem-Tronics, Inc.*,
16 F. Supp. 2d 1192 (S.D. Cal. 1998) .......... *passim*

*Saenz v. Harlingen Medical Center, L.P.*,
613 F.3d 576 (5th Cir. 2010) .......... 7–8

*Villegas v. Albertsons, LLC*,
96 F. Supp. 3d 624 (W.D. Tex. 2015) .......... 7–8, 11–12

**Statues:**

29 U.S.C. § 2652 (2012) .................................................... 1

29 U.S.C. § 2611 (2012) .................................................... 5

**Regulations:**

29 C.F.R. § 825.220 (2016) .............................................. 4

## ARGUMENT

### A. Whether Mr. Acker provided reasonable notice to GM of his need for FMLA leave is a question of fact for a jury, as Mr. Acker provided notice to GM of his need for leave.

Appellant Lonny Acker ("Mr. Acker")[1] is entitled to have his claims for interference and retaliation under the Family and Medical Leave Act ("FMLA") heard by a jury because a reasonable jury could find that Mr. Acker provided reasonable notice to GM of his need for FMLA leave in compliance with the FMLA's requirements. In its Brief, Appellee General Motors, LLC ("GM") seems to argue that because GM has an FMLA call-in procedure, a reviewing court should deem such procedure to be reasonable per se under the FMLA without further inquiry. However, an analysis of the relevant statutory and regulatory provisions, as well as federal precedent, reveal the opposite conclusion. The trial court's grant of summary judgment in favor of GM should be reversed, as Mr. Acker's claims are ripe for consideration by a jury.

[1] To ensure a clear record, Mr. Acker must emphasize that his name is spelled "Lonny Acker," as it is presented in his Brief and Reply and in the Court's docket as a whole. GM incorrectly spelled Mr. Acker's name as "Lonnie Acker" in its Brief. Brief of Appellee [Doc. 00513759146] at pp. 1, 2, & 14.

**1. GM's policies and procedures for employees requesting FMLA leave cannot conflict with the FMLA's "reasonable notice" standard for employees requested unexpected leave.**

The precedent cited by GM actually confirms that the standard of "reasonable notice" set by the FMLA is still applicable despite changes in FMLA regulations over time. GM cites *Callison v. City of Philadelphia*, 430 F.3d 117 (3d Cir. 2005), to support the proposition that the question of whether an individual provided reasonable notice to his or her employer of the need for FMLA leave and whether an employer's FMLA leave policies are reasonable is a question of law. However, *Callison* deals with a very specific employer policy that has nothing to do with an employee's notification of the need for FMLA leave.

In *Callison*, the Third Circuit addressed an employer policy that required employees who were on sick leave, whether FMLA-qualifying leave or not, to notify their employer when leaving home during working hours while on sick leave. 430 F.3d at 118. The policy was intended to curtail any misuse of sick leave and had nothing to do with notifying the employer in question about the need for FMLA-qualifying leave or the FMLA as a whole. *Id.* The plaintiff in *Callison* failed to

contact the employer's hotline when leaving his home during working hours while on sick leave and was disciplined pursuant to the employer's progressive discipline policy. *Id.* The *Callison* Court agreed with the trial court in that case, finding "that the purpose of the FMLA is not compromised by this policy because it 'neither prevents employees from taking FMLA leave nor discourages employees from taking such leave. It simply ensures that employees do not abuse their FMLA leave.'" *Id.* at 120. Because the policy in question did not impact the plaintiff's eligibility for FMLA leave or ability to qualify for FMLA leave, the *Callison* Court found that the FMLA was not implicated by this particular call-in procedure, where all employees on sick leave, whether on FMLA leave or not, had to notify the employer when they were leaving home to ensure that the employee's use of sick leave was not an abuse of the employee's sick leave entitlement:

> Unlike the eligibility provision, the call-in procedure does not serve as a pre-requisite to entitlement of FMLA leave. Rather, the procedure merely sets forth obligations of employees who are on leave, regardless of whether the leave is pursuant to the FMLA. The purpose of the procedure is to provide an additional safeguard against sick leave abuse by employees.

*Id.* at 120–21.

The *Callison* Court also confirmed two essential principles underlying the FMLA. First, "where an employer's internal policies conflict with the FMLA, the FMLA controls and the employee need only comply with the requirements of the Act to invoke its protection." *Id.* at 121. Secondly, "[t]he FMLA is meant to prohibit employers from retaliating against employees who exercise their rights, refusing to authorize leave, manipulating positions to avoid application of the Act, or discriminatorily applying policies to discourage employees from taking leave." *Id.* (citing 29 C.F.R. § 825.220 (2016)).

While GM makes much of recent amendments to FMLA regulations, including amendments allowing an employer to set policies and procedures by which employees request FMLA leave, the FMLA's reasonable notice standard still applies to employees requesting FMLA leave. 29 C.F.R. § 825.303 ("When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case."). While the FMLA anticipates that an employee should "generally" be able to follow his or her employer's customary policies and procedures, the FMLA regulations clearly envision

scenarios where the need for leave are sudden, unexpected, and unpredictable and simply require notice to be given "as soon as practicable." *Id.*

The FMLA regulations also anticipate that an employer's customary policies and procedures are simple and straightforward: "For example, an employer may require employees to call a designated number or a specific individual to request leave." *Id.* Here, GM's policies and procedures require employees to call two separate entities, GM and its FMLA leave administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick"), at different phone numbers.[2]

Courts have recognized that changes in the FMLA regulations still do not allow employers to impose more stringent requirements on employees than those set by the FMLA. In *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 161 (2d Cir. 2011), the Second Circuit considered an instance where the plaintiff notified his supervisor indirectly of his need for FMLA leave. The Second Circuit approved of

[2] GM seems to imply in its Brief that the fault in this case lies, at least in part, with Sedgwick. Brief of Appellee at p. 25 ("Indeed, Acker stated that Sedgwick was 'the ones (sic) that [he] had the most trouble out of.' ROA.166; 207."). However, GM ultimately bears responsibility for the acts of Sedgwick, its agent, as GM is clearly Mr. Acker's employer and must accordingly comply with the FMLA's requirements. 29 U.S.C. § 2611(4) (2012).

the following jury charge, used by the trial court, finding that it correctly stated the FMLA's requirements:

> The district court charged the jury: "In determining whether [Millea's] notice occurred as soon as practicable, you must consider all of the facts and circumstances of the situation. You should note that under the FMLA, notice may be given by the employee, by a family member, or other responsible adult, such as a treating physician or other medical professional. You should also note that an employer may impose customary rules and procedures for notification, provided that they are not more stringent than the requirements under the Family Medical Leave Act."
>
> This instruction is not misleading: It correctly explains that the FMLA authorizes indirect notification and that an employer is free to implement internal notification rules only to the extent those rules are not more strict than the law allows.

*Id.* at 162. The *Millea* Court rejected the employer's argument that the charge to the jury was an incorrect statement of the law:

> Metro–North argues that the "not more stringent" language is overly broad because companies may implement internal leave policies more strict than the FMLA as long as the "timing requirement" is not more strict than the FMLA permits. This is incorrect: The FMLA limits stringency, requiring certain latitude in terms of timing, method of notification, etc. If the law expressly states that an employee may do a thing, a company's internal leave policy may not prohibit it. In this case, the FMLA's implementing regulations state that an employee in Millea's position may notify his employer indirectly of his need for unforeseen medical leave; a company's internal leave policy may not

> require otherwise. The jury instruction correctly captured this idea.

*Id.*

The *Millea* Court's holding is in line with Fifth Circuit precedent, which has been cited even after the FMLA's regulations were amended: "In general, the Fifth Circuit frowns upon strict enforcement of an employer's FMLA procedures where the employee gives adequate notice of his need for FMLA leave and does not affirmatively refuse to comply with the employer's procedures." *Villegas v. Albertsons, LLC*, 96 F. Supp. 3d 624, 632 (W.D. Tex. 2015) (citing *Saenz v. Harlingen Med. Ctr., L.P.*, 613 F.3d 576 (5th Cir. 2010)). Courts in other circuits, both before and after the FMLA's regulations were amended, have followed this reasoning in finding that an employer's FMLA procedures cannot impose stricter notice requirements than the "reasonable notice" anticipated by the FMLA. *See Saenz*, 613 F.3d at 583 ("The FMLA requires only that an employee contact her employer and state that leave is needed as soon as practicable under the facts and circumstances of the particular case.") *Villegas*, 96 F. Supp. 3d at 632; *see also Millea*, 658 F.3d at 161–62 (2d Cir. 2011); *Curry v. Goodwill Indus. Of Ky., Inc.*, No. 1:11CV-00093-JHM, 2013 WL 1411132, at *4

(W.D. Ky. Apr. 8, 2013); *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1199–1200 (S.D Cal. 1998) ("The FMLA does not specify a particular time limit as to when an employee must call in and request FMLA leave, rather the FMLA mandates that such notice be 'as soon as practicable.'").

To the extent that GM's call-in policies and procedures conflict with the FMLA's requirement that an employee notify his or her employee of the need for leave "as soon as practicable," the FMLA must control. In this case, the nature of Mr. Acker's condition may require leave at a moment's notice, as Mr. Acker cannot predict when his condition will enter the acute phase and cause severe disorientation, blackouts, grayouts, heart palpitations, and extreme fatigue. ROA 290–332, 346–349, 471.[3] Under the circumstances presented by this case, the reasonableness of GM's policies and procedures for requesting FMLA leave and of Mr. Acker's notice to GM of his need for leave are questions ripe for determination by a jury. *Millea*, 658 F.3d at 162.

[3] GM seems to argue that Mr. Acker must prove that his condition was in the acute phase when he requested FMLA leave. However, Mr. Acker only requested leave under the FMLA when his need for time away from work involved his disability, acute iron-deficiency anemia and recognizes the distinction between sick leave and protected FMLA leave. ROA.208. Mr. Acker also notes in sworn testimony the sudden nature of his condition in sworn testimony contained in the record. ROA 415–416.

**2. The amount and timing of notice provided by Mr. Acker presents a factual dispute that raises a genuine issue of material fact, as a jury could conclude that Mr. Acker provided sufficient notice under the FMLA and that GM interfered with Mr. Acker's rights under the FMLA and retaliated against Mr. Acker.**

GM repeatedly references the "undisputed evidence" in its Brief to argue, but like the trial court, GM ignores much of Mr. Acker's own, sworn testimony regarding the level of notice provided to GM and Sedgwick. Further, Mr. Acker provided at least some notice to GM of his need for FMLA leave, which, as discussed above, is all that the FMLA requires at the initial notification stage. Accordingly, this case should be heard by a jury, so a jury can decide whether the notice provided by Mr. Acker was reasonable in light of the facts and circumstances.

Mr. Acker testifies under oath that he made a call and followed the appropriate menu prompts to request FMLA leave through both GM's absence call-in line and Sedgwick's leave request call-in line.[4]

[4] Mr. Acker acknowledged in his deposition that the phone records he provided may not be complete, contrary to GM's claim that Mr. Acker provided the "universe" of phone records related to his claims. ROA.201, 212–213. Further, as both GM's absence call-in line and Sedgwick's leave request call-in line are automated, it is certainly plausible that Mr. Acker was transferred through GM's absence call-in line to Sedgwick, a process that is used by GM at present day. ROA.211, 490. Regardless, Mr. Acker testifies that he gave notice to GM and/or Sedgwick for each

ROA.290–332, 357–362, 408–411, 444–451. GM contends that Mr. Acker's testimony must be wholly disregarded because it is "self serving," despite Mr. Acker's clear remembrance of selecting menu options to notify both GM and Sedgwick of his need for FMLA leave. ROA.290–332, 357–362, 408–411, 444–451. Simply because a plaintiff's testimony may be "self serving" does not mean such testimony should be excluded. *C.R. Pittman Constr. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) ("A party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone."). The trial court should have considered Mr. Acker's testimony, weighed it properly under the summary judgment standard, and denied GM's Motion for Summary Judgment.

Regardless, GM concedes that Mr. Acker provided at least some notice to GM of his need for FMLA leave. Brief of Appellee at pp. 21–25. Despite receiving notice of Mr. Acker's need for FMLA leave, GM chose to punish Mr. Acker with several weeks of unpaid disciplinary layoff time. This disciplinary layoff time is directly correlated to Mr.

---

of his absences when requesting FMLA leave. ROA.290–332, 357–362, 408–411, 444–451.

Acker's requests for leave and support claims for both interference and retaliation under the FMLA.

GM cites *Harrelson v. Lufkin Industries, Inc.*, 614 F. App'x 761 (5th Cir. 2015) to support its conclusion that discipline for absences it claims are not covered by the FMLA is "simply not retaliatory." Brief of Appellee at p. 45. However, *Harrelson* is distinguishable from the facts of this case, as the plaintiff in *Harrelson* could not provide any evidence of notice to his employer of his need for FMLA leave for each instance of FMLA leave requested. 614 F. App'x at 762.

In *Harrelson*, the plaintiff claimed that he was told he was approved for FMLA leave but could not identify any one individual who approved said leave. *Id.* Further, the plaintiff's physician could not explain the length of time he would need for FMLA leave in a clear or precise manner. *Id.* Ultimately, the *Harrelson* Court found that because the plaintiff had not engaged in protected activity because he had not properly requested FMLA leave, his termination could not be in retaliation for exercising his rights under the FMLA. *Id.* at 763–64.

In this case, Mr. Acker engaged in protected activity by requesting FMLA leave for the absences at issue. Whether or not the notice

provided to GM of Mr. Acker's need for leave was reasonable is a question ripe for a jury's determination. *See Villegas*, 96 F. Supp. 3d at 632–33; *see also Lubke v. City of Arlington*, No. 4:02-CV-188-Y, 2003 WL 22466200, at *4 (N.D. Tex. Sept. 9, 2003). If a jury could reasonably conclude that Mr. Acker provided reasonable notice to GM of his need for FMLA leave, then a jury could also conclude that Mr. Acker's punishment by GM interfered with his rights under the FMLA and was in retaliation for his requests for leave. *Villegas*, 96 F. Supp. 3d at 632–33. This Court should reverse the trial court's grant of summary judgment and allow this matter to proceed to trial before a jury.

### B. Mr. Acker's requests for FMLA leave constitute protected activity to support a claim of disability discrimination and retaliation under the ADAAA.

Mr. Acker maintains that he has presented sufficient evidence to support a claim of disability discrimination and retaliation under the Americans with Disabilities Act Amendments Act of 2008, as more fully stated in his initial Brief. Brief of Appellant at pp. 52–54. Mr. Acker incorporates his previous briefing into this Reply Brief by reference.

### C. GM's apparent assertion that its policy on employee notice for FMLA leave must be accepted as reasonable by the court without further examination by a jury would lead to employer abuse of the FMLA if accepted by this Court.

GM's argument seems to point to the conclusion that because it has a policy setting specific notice requirements for employees requesting FMLA leave, reviewing courts must follow said policy blindly, even if the employer's policies and procedures require notice beyond the FMLA's requirements. If accepted, this conclusion would allow employers to hide behind their FMLA notice policies and procedures, make said policies and procedures even more complex than the policies and procedures at issue in this case, and impose unreasonable requirements upon employees who require FMLA leave to care for themselves or a close family member experiencing a serious medical condition.

The FMLA was enacted "to allow workers flexibility in scheduling time to deal with family and medical problems and alleviate some of the tension created by the competing demands of work and family." *Mora*, 16 F. Supp. 2d at 1199–1200. The level of notice required by the FMLA is recognized to be a "'low threshold' for the employee conduct sufficient to give notice." The standard of notice under the FMLA is one of

reasonableness, and an employer's policies and procedures should not be authorized to deviate from this level of notice. The FMLA states that "[t]he rights established for employees under this Act or any amendment made by this Act shall not be diminished by any collective bargaining agreement or any employment benefit program or plan." 29 U.S.C. § 2652 (2012).

Other courts have rejected the argument that the employer's policies and procedures govern the reasonableness of an employee's notice under the FMLA, and this Court should reach the same conclusion:

> Defendant relied heavily on the fact that it has a policy that an employee call the sick line thirty minutes before the beginning of his or her shift to avoid receiving a tardy or an absence.
>
> This Court will not allow the Defendant to proceed with such a theory. The FMLA does not specify a particular time limit as to when an employee must call in and request FMLA leave, rather the FMLA mandates that such notice be "as soon as practicable." Defendant's policy which requires that an employee who will miss work call in one half an hour before his or her shift begins conflicts with the FMLA. The specific purpose of the Act is to deal with situations such as the one presented in this case—a worker having to balance the needs of family and work and needing flexibility to deal with emergency family and medical problems. A company policy that does not allow for such flexibility nor recognize that in FMLA leave situations it may not be possible for an

> employee to call in one half and hour before a shift begins violates the employee's rights under the Act. Undoubtedly, an employer can establish its own policies for usual and customary notice for requesting general leave. But, such polices must defer to the FMLA when FMLA leave is appropriate.

*Mora*, 16 F. Supp. 2d at 1216–17 (internal citations omitted).

This Court should reverse the trial court's grant of summary judgment and remand this case to be tried before a jury, as Mr. Acker has presented a genuine issue of material fact on his interference and retaliation claims under the FMLA and his discrimination and retaliation claims under the ADAAA.

## CONCLUSION

The trial court erred in granting Defendant's Motion for Summary Judgment. First, the trial court failed to properly apply the proper standard of review in reaching its determination granting Defendant's Motion for Summary Judgment. Further, the trial court improperly concluded that Mr. Acker failed to provide reasonable notice under the FMLA and that Defendant's policies and procedures are reasonable under the FMLA, both determinations squarely intended for determination by a jury. Finally, Mr. Acker presented sufficient evidence that he engaged in protected activity under the ADAAA and

the TCHRA in requesting a reasonable accommodation for his disability in the form of medical leave, which support his claims for disability discrimination and retaliation. This Court should reverse the decision of the trial court and remand this matter for further proceedings, including a trial before a jury on Mr. Acker's FMLA interference and retaliation and ADAAA and TCHRA disability discrimination and retaliation claims.

Respectfully submitted,

*/s/ Allison C. Reppond*
Robert J. Wiley
Texas Bar No. 24013750
*Board Certified – Labor and Employment Law – Texas Board of Legal Specialization*
Allison C. Reppond
Texas Bar No. 24085733

LAW OFFICE OF ROB WILEY, P.C.
2613 Thomas Avenue
Dallas, Texas 75204
Telephone: (214) 528-6500
Facsimile: (214) 528-6511
areppond@robwiley.com

ATTORNEYS FOR APPELLANT

## CERTIFICATE OF SERVICE

I, Allison C. Reppond, certify that today, December 1, 2016, a copy of the Reply Brief of Appellant was served upon Counsel of Record for the Appellee via the Court's ECF system.

*/s/ Allison C. Reppond*
Allison C. Reppond

## CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.2.7(c), undersigned counsel certifies that this brief complies with the type-volume limitations of 5th Cir. R. 32.2.7(b).

1. Exclusive of the portions exempted by 5th Cir. R. 32.2.7(b)(3), this brief contains 3,993 words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced, serif typeface using Century Schoolbook 14 point font in text and Century Schoolbook 12 point font in footnotes produced Microsoft Word.

3. Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32.2.7, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

*/s/ Allison C. Reppond*
Allison C. Reppond